UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff/Respondent,<br><br>v.<br><br>JASON WHITIS,<br><br>    Defendant/Movant. | No. 5:17-CR-68-JMH-HAI-1<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In the form of a memorandum, federal prisoner Jason Whitis has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. D.E. 119. The government has responded in opposition, including in its response an affidavit from Whitis's trial-level counsel, Hon. Benjamin Allen. D.E. 128; D.E. 128-1. Whitis did not file a reply. The record contains transcripts of his rearraignment (D.E. 110) and sentencing (D.E. 105), as well as his presentence report (D.E. 101). The motion stands ripe for review.

The Court recognizes that Whitis is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488

1

(6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

## I. Background

In August 2017, Whitis pleaded guilty to conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. D.E. 58. The plea agreement noted that he faced a maximum penalty of life imprisonment. D.E. 61 at 3 ¶ 4. As part of the agreement, Whitis waived his right to attack collaterally his guilty plea, conviction, and sentence, except for claims of ineffective assistance of counsel. *Id*. at 4 ¶ 8. By judgment entered November 7, 2017, Whitis was sentenced to 200 months of imprisonment. D.E. 94. Whitis appealed to the Sixth Circuit, challenging the procedural and substantive reasonableness of his sentence. On September 27, 2018, the Court of Appeals affirmed his sentence. D.E. 114. Whitis did not petition for a writ of certiorari in the Supreme Court of the United States.

In June 2019, Whitis filed his timely motion under § 2255. D.E. 119. The motion alleges that:

(1) Counsel was ineffective for failing to successfully object to the application of the leadership enhancement. D.E. 119 at 3-4.

(2) Counsel was ineffective for failing to advise Whitis of the application of *Johnson v. United States*, 135 S. Ct. 2551 (2015), to his case and for failing to argue *Johnson* invalidated the application of the leadership enhancement. *Id*. at 2.

(3) Counsel was ineffective for failing to argue against the application of the possession-of-a-firearm enhancement. *Id*. at 3-4.

(4) The imposed sentence exceeds the statutory maximum. *Id*. at 4.

  (5)  The imposed sentence varies from that of his co-defendant who has the same criminal history and charges. *Id*. at 3.

  (6)  The Court violated due process by imposing a sentence above the guidelines range. *Id*. at 7.

  (7)  The Court violated due process by applying sentencing enhancements. *Id*. at 3.

  (8)  The Court failed to consider the § 3553 factors as they pertain to his physical health. *Id*. at 5-7.

  (9)  Whitis was incompetent to enter his guilty plea. *Id*. at 7.

Although Whitis lists his grounds for relief differently in his motion, the Court will address the above as Grounds One through Nine.

## II. Legal Standards for Ineffective Assistance of Counsel

To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Strickland*, 466 U.S. at 688. But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted).

In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable,

3

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.  When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 685.  Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry.  *Id*. at 697.

To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

### III.  Ground One – Leadership Enhancement

Whitis argues his counsel, Hon. Benjamin Allen, was ineffective because he failed to successfully argue against his two-level enhancement for being "an organizer, leader, manager, or supervisor" in the conspiracy under United States Sentencing Guideline ("USSG") § 3B1.1(c). D.E. 119 at 3-4.  USSG § 3B1.1(c) provides that "if the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels."  USSG § 3B1.1(c).

In determining whether to apply the § 3B1.1(c) leadership role enhancement, courts must consider the defendant's "exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  USSG § 3B1.1 cmt. n. 4.

Whitis's counsel ensured that Whitis would be able to argue against the application of the leadership enhancement at sentencing.  D.E. 128-1 at 2 ¶ 6; *see* D.E. 61 at 4 ¶ 5(d).  Notably, counsel did in fact argue against the application of the enhancement at sentencing and the court

4

heard testimony from Detective Eli Morris regarding information he obtained during the investigation indicating that Whitis was the leader in the conspiracy. *See* D.E. 105.

Whitis's co-defendants both stated to Detective Morris that Whitis was the one who "arranged the transaction in Louisville," and asked his co-defendant, Joshua Pyles, if he wanted to "make some money." *Id*. at 5-6. Whitis's co-defendant Joshua Pyles informed Detective Morris that he had gone to Louisville with Whitis ten to fifteen times. *Id*. Based on the information contained in the PSR and the testimony of Detective Morris, the district court found that the "whole deal was orchestrated by Mr. Jason Whitis." *Id*. at 8.

Whitis does not allege or explain what exactly was deficient about his counsel's argument against the application of the leadership enhancement at sentencing. Therefore, he cannot show that his "sentence was increased by the deficient performance of his attorney." *Booker*, 254 F. App'x 520, 525. Further, the Sixth Circuit has held that when applying the standard set forth in *Strickland*, "Counsel does not fall below this standard by failing to prevail when arguing a debatable point to the court." *Hodge v. Haeberlin*, 579 F.3d 627, 644 (6th Cir. 2009).

Because Whitis has failed to make a showing under either prong of the *Strickland* analysis as to his claim under Ground 1, this claim must be denied.

### IV.  Ground Two – Application of *Johnson*

Whitis argues his counsel was ineffective for failing to argue that the two-level leadership enhancement did not apply based on the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Whitis is mistaken about the application of *Johnson* to his case. The court in *Johnson* held that imposing an increased sentence under the residual clause of 18 U.S.C. § 924(e)(2)(B) violates the constitutional guarantee of due process. *Johnson*, 135 S. Ct. at 2563. *Johnson* is inapplicable to Whitis's case as he was neither charged with nor sentenced under 18

5

U.S.C. § 924.  *See* D.E. 1 (indictment); D.E. 94 (judgment).  Further, there is no reference in *Johnson* to the leadership enhancement in USSG § 3B1.1.

Whitis's counsel recognizes that *Johnson* is inapplicable to Whitis's case.  *See* D.E. 128-1 at 4 ¶ 13.  He states that Whitis did not request that he argue that *Johnson* invalidated the leadership enhancement under USSG § 3B1.1 and he did not raise the case himself as a basis to object to the leadership enhancement.  *Id*.

The Sixth Circuit has stated that "failure of trial counsel to raise wholly meritless claims cannot be ineffective assistance of counsel."  *United States v. Martin*, 45 F. App'x 378, 381 (6th Cir. 2002).  As such, Whitis's claim that his counsel rendered ineffective assistance for failure to challenge his leadership enhancement under *Johnson* must be denied.

## V.  Ground Three – Firearm Enhancement

Whitis argues his counsel was ineffective for failing to object to his two-level enhancement for possession of a firearm during the offense under USSG § 2D1.1(b)(1).  Whitis contends that the enhancement was inapplicable to him specifically because a firearm was not located on his person upon arrest.  D.E. 119 at 3.  The enhancement was applied in the PSR because there were two firearms present at Whitis's arrest.  D.E. 101 at 6 ¶ 20.  Co-defendant Robbie Whitis was observed with a loaded .22 caliber semiautomatic firearm located on his right hip.  *Id*. at 4-5.  A second firearm was located upon a search of the vehicle, where law enforcement located a loaded .380 caliber semiautomatic pistol in the backseat under clothing.  *Id*. at 5.

The USSG provide that an enhancement under § 2D1.1(b)(1) "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  USSG § 2D1.1 cmt. n. 11(A).  "Under Section 2D1.1(b)(1), the government has the burden of showing by a preponderance of the evidence that (1) the defendant actually or

6

constructively possessed the weapon, and (2) such possession was during the commission of the offense." *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012). To prove possession, "all that the government need show is that the dangerous weapon [was] possessed during 'relevant conduct.'" *Id*. "Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996).

The Sixth Circuit has found constructive possession in several cases with facts similar to those at issue in Whitis's case. *See e.g.*, *Hill*, 79 F.3d at 1486 (finding constructive possession when the firearm was discovered in an area where Defendant had "full access and where drugs were found."); *United States v. Shults*, 68 F. App'x 648 (6th Cir. 2003) (finding constructive possession where defendant was aware of co-defendant's possession of a gun and such possession was reasonably foreseeable); *United States v. Duncan*, 918 F.2d 647, 651 (6th Cir. 1990) (finding the enhancement "appropriate if a weapon is found in the . . . automobile that facilitated the drug transaction, or on the person of the defendant or an accomplice").

Whitis's counsel ensured that Whitis would be able to argue against the application of the firearm-possession enhancement at sentencing. D.E. 128-1 at 2 ¶ 6; *see* D.E. 61 at 4 ¶ 5(c). In his affidavit, Mr. Allen states that he told Whitis he would research the application of the firearms enhancement and file any "non-frivolous objections on his behalf." D.E. 128-1 at 3 ¶ 8. He further states that, on October 20, 2017, he tendered his written objections to the PSR to the United States Probation Office which did not include an objection to the firearms enhancement "because he believed the evidence was overwhelming that Mr. Whitis constructively possessed the firearm," and that an objection to the enhancement "would prove frivolous." *Id*. at ¶ 9. Mr. Allen's explanation for deciding not to object "stemmed from Mr. Whitis's close relationship with his

brother and co-defendant, Robbie Whitis, who holstered a pistol on his hip," and the firearms were located in Whitis's then-girlfriend's vehicle, which she let Whitis borrow, and that is where officers found the firearms. *Id*. at 4 ¶ 11.

The PSR reports that Whitis, although seated in the front passenger seat of the vehicle, admitted to officers during the traffic stop that the owner of the vehicle was his girlfriend at the time. D.E. 101 at 4 ¶ 10. Within the vehicle were two firearms. One was holstered on the hip of co-defendant Robbie Whitis and the other was located in the rear passenger seat underneath a pile of clothes. *Id*. at 4 ¶ 9. Co-defendant Robbie Whitis admitted to law enforcement that the men went to Louisville to purchase methamphetamine and marijuana, and that he "brought the firearm found in his possession for protection." *Id*. at 5 ¶ 13. Co-defendant Joshua Pyles admitted to being armed with a .380 caliber pistol and that he went on the trip to act as protection. *Id*. at 5 ¶ 14. It is clear based on the information contained in the presentence investigation report that the firearms within the vehicle were related to the trip to Louisville to purchase drugs. Further, as stated earlier, the district court found that Whitis was a leader in the conspiracy, having arranged the trip to Louisville to obtain the methamphetamine. D.E. 105 at 8.

"Failure of trial counsel to raise wholly meritless claims cannot be ineffective assistance of counsel." *Martin*, 45 F. App'x at 381. "Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456 (6th Cir. 1998). Under these facts, defense counsel reasonably believed that he had no non-frivolous basis to contest the application of the firearm enhancement. The decision not to contest the enhancement given all that was available to Mr. Allen does not give rise to a claim of ineffective assistance of counsel.

8

Furthermore, even assuming that counsel's failure to object to the enhancement constitutes deficient performance under *Strickland*, Whitis has failed to establish any prejudice from this failure. He has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Whitis must show that "different actions or a different strategy by counsel could have altered the verdict." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Whitis has not provided the Court with any evidence which shows a reasonable probability that, had his counsel challenged the application of the possession-of-a-firearm enhancement, the outcome of his sentence would have been different.

Because Whitis cannot satisfy either prong of *Strickland*, his claim for relief on Ground 3 must be denied.

## VI. Whitis's Non-IAC Claims Are Waived

Grounds Four through Nine must be dismissed as waived because they are not claims of ineffective assistance of counsel ("IAC").

If done knowingly and voluntarily, a criminal defendant may, by the terms of the plea agreement, waive his right to file a direct appeal and his right to collaterally attack his conviction and sentence under § 2255. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001). A prisoner may challenge the validity of such a waiver on the basis that "his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007).

Upon the undersigned's initial review, it appeared that Whitis may be alleging his plea was not knowing and voluntary due to the following statement: "While in court Mr. Whitis was overloaded with withdrawal. He almost died over the amount of insulin the jail gave him." D.E. 119 at 7. However, Whitis has failed to provide additional information or argument on the issue.

9

Further, District Judge Hood performed a full plea colloquy with Whitis finding him both competent and knowingly and voluntarily entering his plea. D.E. 110 at 17. Any possible claim by Whitis that his plea was not knowing and voluntary is insufficiently developed and therefore waived.

Whitis also does not argue that his decision to plead guilty was the product of IAC. *See* D.E. 119. Paragraph 8 of the plea agreement states:

> The Defendant waives the right to appeal the guilty plea and conviction but reserves the right to appeal the final sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

D.E. 61 at 4. By its terms, the collateral attack waiver in the last sentence of paragraph 8 bars Grounds Four through Nine of Whitis's motion, which allege errors by the Court. *See* D.E. 119. The same holds true for any other occasion in which Whitis raises a non-IAC due process claim. Because Whitis gives the Court no reason to find that his collateral attack waiver was invalid, his non-IAC claims are waived, and should be dismissed.

Alternatively, Whitis's attacks on his sentence also fail because the United States Court of Appeals for the Sixth Circuit addressed the procedural and substantive reasonableness of Whitis's sentence on appeal. *See United States v. Pyles*, 904 F.3d 422, 426 (6th Cir. 2018). Absent an exceptional circumstance, such as an intervening change in the law, petitioners may not use a § 2255 motion to relitigate an issue that was raised on appeal. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). On direct appeal, Whitis argued that the district court failed at sentencing to adequately consider the § 3553 factors. *Pyles*, 904 F.3d at 425-26. Whitis also argued that the upward variance from the sentencing guidelines in his case violated substantive due process. The Sixth Circuit considered

both arguments and upheld Whitis's sentence. *Pyles*, 904 F.3d at 426. Therefore, his claims on those bases in his § 2255 motion are precluded.

### VII. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that Whitis's 28 U.S.C. § 2255 motion (D.E. 119) be **DENIED**.

This case does not warrant an evidentiary hearing. An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. In this case, even taking as true Whitis's factual allegations that are not contradicted by the record, they would not entitle him to relief. The record therefore "conclusively show[s]" he is not entitled to relief. *Arredondo*, 178 F.3d at 782.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting

11

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Court has considered the issuance of a Certificate of Appealability as to each of Whitis's claims. No reasonable jurist would find the assessment on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

When claims are dismissed on procedural grounds, a Certificate may only issue if the movant can show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Whitis's non-IAC claims were waived as part of his valid plea agreement. That these claims are procedurally barred is not debatable.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 18th day of October, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge